IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEILA RODULFA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 18-cv-03846-PJM |
| ) | |
| BOARD OF EDUCATION OF ) | |
| PRINCE GEORGE'S COUNTY, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Board of Education of Prince George's County ("Defendant Board of Education), Stephanie Barber ("Defendant Barber"), and Shaneena Holland ("Defendant Holland") (collectively "Defendants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby file this Motion for Summary Judgment ("Motion"). The reasons why Defendants' Motion should be granted are set forth below.

**Introduction**

In this case, Plaintiff Leila Rodulfa ("Plaintiff") sues Defendants for breach of contract and interference and retaliation under the Family and Medical Leave Act ("FMLA"). Plaintiff's claims fail because she voluntarily resigned her position with Defendant Board of Education, does not identify any contractual obligations that were breached by Defendant Board of Education, and any alleged conduct on the part of Defendants does not constitute FMLA interference or retaliation.

**Statement of Material Facts Not In Dispute**

Plaintiff Leila Rodulfa ("Plaintiff") was hired by Defendant as a full-time first-grade

teacher at Judge Sylvania W. Woods Elementary School effective August 17, 2015. Compl. at ¶ 8. At the time of her hiring, Plaintiff was a non-tenured probationary employee for a period of three (3) years. Ex. 1 at 50:11-18; Ex. 2 at 1.

On or about November 15, 2017, Plaintiff was placed on a Professional Growth Plan for Improvement. Ex. 3. Plaintiff was also referred to the Peer Assistance and Review (PAR) Program on or about November 16, 2017. Ex. 4. "The primary purpose of the PAR Program is for highly effective teachers to provide regular, consistent support (particularly peer-coaching and peer-observations) to non-tenured teachers in need of assistance in developing the competencies that make teachers successful." Ex. 5 at 2.

The first step of the PAR program consists of a referral of a non-tenured teacher into the PAR program by his or her Principal. *Id.* at 5. If accepted into the PAR Program, the non-tenured teacher will be assigned a Consulting Teacher. *Id.* at 6. If the non-tenured teacher fails to improve his or her performance, the Principal may elect to submit a Performance Data Review Packet to the PAR Panel. *Id.* After review of the information provided in the Performance Data Review Packet and from the Consulting Teacher, the PAR Panel makes a recommendation for either non-renewal of contract of the non-tenured teacher to Defendant's Employee and Labor Relations Office or a recommendation of contract renewal with continued PAR support. *Id.* Finally, non-tenured teachers who are recommended for non-renewal may appeal the recommendation to the PAR Panel. *Id.* at 7.

On or about January 22, 2018, Plaintiff was issued an Interim Evaluation in which she received a rating of 2.2 (needs improvement). Ex. 6. On or about February 13, 2018, Plaintiff submitted her request for FMLA leave for the period between February 9, 2018, and March 9, 2018. Ex. 7. Plaintiff requested FMLA leave to deal with her anxiety disorder. Ex. 1 at 101:7-10.

On February 14, 2018, Plaintiff's request for FMLA leave was approved. Ex. 8.

On or about February 22, 2018, Plaintiff submitted a second request for FMLA leave for the period between March 12, 2018, and April 9, 2019 (Ex. 9), which was granted on March 15, 2019. Ex. 10. On this occasion, Plaintiff requested leave to deal with her depression. Ex. 1 at 104:21-105:3. On or about March 8, 2018, Plaintiff was notified by Defendant that a Performance Data Review Packet had been submitted to the PAR Panel by her Principal. Ex. 11.

The very next day, on March 9, 2018, Plaintiff submitted her notice of voluntary resignation to Defendant. Ex. 12. In her notice of voluntary resignation, Plaintiff indicated that the reason for her leaving was "personal illness" and also provided the following comment, "[t]hank you so much for all the support." *Id.* On the very same day, Plaintiff e-mailed Principal Holland to inform of her resignation and stated, "thank you for everything." Ex. 13.

Plaintiff testified that no one at Defendant Board of Education forced her to resign, that she resigned voluntarily of her own free will, without coercion from anyone, and that it was solely her decision to resign. Ex. 1 at 108:8-20. Plaintiff also discussed her resignation with her husband and prayed about it prior to doing so. *Id*. at 109:5-22. Plaintiff learned that very same day **after** she submitted her notice of voluntary resignation that she had been diagnosed with breast cancer. Ex. 1 at 110:17-111:2.

However, on March 20, 2018, Plaintiff requested that her voluntary resignation be rescinded by way of e-mail (Ex. 14) and letter (Ex. 15). In her letter, Plaintiff explained as follows:

> I would like to request your help in reversing my resignation which I tendered online last March 9, 2018. **It was not my real intention to resign but I found myself accidentally resigning**.
>
> **Upon realizing the gravity of my mistake**, I deemed it wise to seek counsel from my old friends and they suggested me to seek assistance from you in

3

reversing my accidental resignation. **The resignation was brought about by the circumstances I was in my thought process was not going the direction beneficial to my situation**.

Since I applied for a Family Medical Leave of Absence, due to pressing health issues, I have to stay home all by myself of which I am not used to do. **Staying home all alone doing nothing bored me a lot unlike when I am inside the classroom. My mind would be clattered with "what ifs" and other thoughts that my health issues would impact upon my well being and quality of life**.

**I am sorry for all the undue consequences my accidental resignation has caused**.

Ex. 15 (emphasis added). Nowhere in her letter does Plaintiff allege any breach of contract or FMLA interference or retaliation on the part of Defendants. Rather clearly, Plaintiff acknowledges that she resigned voluntarily.

On March 20, 2018, the very same day, Defendant responded to Plaintiff's e-mail by informing Plaintiff that the resignation could not be reversed and that Plaintiff could reapply as a new hire. Ex. 14. On April 26, 2018, Defendant informed Plaintiff that her contract of employment was terminated as a result of the PAR Panel's recommendation for non-renewal. Ex. 16.[1] Plaintiff appealed her non-renewal of contract to the Board of Education for Prince George's County, which is currently pending.

Finally, on or about May 16, 2019, Plaintiff filed her Notice of Charge with the U.S. Equal Employment Opportunity Commission. Plaintiff asserts in her Complaint claims for breach of contract (Count I) and interference and retaliation under the FMLA (Count II). For the reasons stated below, Defendants are entitled to summary judgment.

---

[1] Despite Plaintiff's resignation, the PAR Panel continued its deliberations and recommended that Plaintiff's employment contract not be renewed so that Plaintiff's employment file thoroughly reflected her poor performance prohibiting her from being rehired. This was to close a loophole where non-tenured teachers would resign prior to the PAR Panel's deliberation, the PAR Panel would then not make any recommendation, and the non-tenured teacher would reapply as if no issues were previously present. *See* Ex. 18 (Affidavit of Jonathan Wemple).

**Argument**

I. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The movant has "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes will demonstrate the absence of any genuine issue of material facts." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To withstand a motion for summary judgment, the nonmoving party must do more than present a mere scintilla of evidence. *See Phillips v. CSX Transport, Inc.*, 190 F.3d 285, 287 (4th Cir. 1999), *cert. denied,* 529 U.S. 1004 (2000). Instead, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those which "might affect the outcome of the suit under the governing law." *Id.*

Indeed, the court has an affirmative obligation to prevent factually unsupported claims from proceeding to trial. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). Here, Defendants' Motion should be granted for the reasons set forth below.

## II. NO BREACH OF CONTRACT[2]

Defendants' Motion for Summary Judgment should be granted as to Count I of the Complaint because Defendant Board of Education did not breach any contract with Plaintiff. In fact, Plaintiff, both in her Complaint and deposition testimony, did not even provide the contractual basis for any of the alleged breaches cited by her in her Complaint. The bottom line is this: Defendant Board of Education did not breach any contract as is set forth below.

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 334–35 (2017) (citation and internal quotation marks omitted). To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt. Inc.*, 988 F, Supp. 2d 542, 550 (D. Md. 2013) (quoting *Taylor. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318–19, 888 A.2d 377, 396 (2005).

In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by

---

[2] Plaintiff's counsel has clarified that Count I of the Complaint is asserted only against Defendant Board of Education. Ex. 1 at 196:17-20.

defendant.'" (citation omitted); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F.Supp.2d 419, 423 (D. Md. 2001).

Here, Plaintiff fails to meet her preliminary burden of alleging a contractual basis for any of the alleged breaches she references in the Complaint. For this reason alone, Defendants' Motion for Summary Judgment should be granted as to Count I of the Complaint. Despite this, Defendants will address Plaintiff's alleged breaches *seriatim*.

First, Plaintiff alleges that Defendant Board of Education breached a contract by requiring Plaintiff to undergo formal and informal observations. Compl. at ¶ 39. However, Plaintiff does not cite to the contractual language that prohibits this requirement. Rather, in her deposition, Plaintiff admitted that Defendant has the right to conduct both formal and informal observations. Ex. 1 at 179:13-180:13. Furthermore, COMAR 13A.07.09.04 permits these observations.

Second, Plaintiff alleges that Defendant Board of Education breached a contract by requiring Plaintiff to prepare two different lesson plans for the formal and informal observations. Compl. at ¶ 39. Again, Plaintiff does not cite to the contractual language that prohibits this conduct. However, in her deposition, Plaintiff again admitted that Defendant had the right to require Plaintiff to prepare two separate lesson plans. Ex. 1 at 180:14-182:4. In addition, the PAR Program allows Consulting Teachers to assist non-tenured teachers by offering and arranging demonstration lessons, providing team teaching specific lessons, and by co-planning specific lessons. Ex. 5 at 12. These lessons are through the PAR Program and are independent of the lesson plans required at the school level that are evaluated by formal and informal observations by administrators.

Third, Plaintiff alleges that Defendant Board of Education breached a contract by

requiring Plaintiff to create separate, detailed lesson plans when others with similar ratings were not so required. Compl. at ¶ 39. Nevertheless, Plaintiff testified that she does not know of any other teachers with similar ratings that were not required to prepare separate detailed lesson plans. Ex. 1 at 182:5-14.

Fourth, Plaintiff alleges that Defendant Board of Education breached a contract by failing to approve Plaintiff's request for FMLA leave dated February 22, 2018. Compl. at ¶ 39. However, Defendant did approve Plaintiff's leave on March 15, 2018. *See* Ex. 10.

Fifth, Plaintiff alleges that Defendant Board of Education breached a contract by notifying Plaintiff that a Performance Data Review Packet had been submitted to the PAR Panel by her Principal while she was out on FMLA leave. Compl. at ¶ 39. Again, Plaintiff does not cite to any contractual language that prohibits this. Rather, Plaintiff admitted in her deposition that she is unaware of any such contractual prohibition. Ex. 1 at 185:1-7. Nevertheless, the law allows an employer to investigate, discipline and/or terminate an employee even while that employee is out on FMLA leave. *Mercer v. Arc of Prince Georges County, Inc.*, 532 F. App'x 392, 396-97 (4th Cir. 2013). Finally, Plaintiff does not provide any authority for the proposition that providing an employee with notification constitutes a breach of contract or FMLA interference or retaliation.

Sixth, Plaintiff alleges that Defendant Board of Education breached a contract by failing to hold her disciplinary actions in abeyance while she was on FMLA leave. Compl. at ¶39. This assertion is without merit for several reasons. As a preliminary matter, Plaintiff was not disciplined. Instead, she resigned. As to the breach of contract claim, Plaintiff does not cite to the contractual language that prohibits this conduct. More importantly, Plaintiff's claims are contrary to law as an employer is not prevented from investigating, disciplining, and/or terminating an

employee for poor performance while the employee is out on FMLA leave. *Mercer v. Arc of Prince Georges County, Inc.*, 532 F. App'x 392, 396-97 (4th Cir. 2013).

Seventh, Plaintiff alleges that Defendant Board of Education breached her contract by not renewing it on April 26, 2018. Compl. at ¶ 39. Plaintiff fails to provide information as to why a non-tenured probationary employee who voluntarily resigned her employment a month prior to this notice constitutes a breach of any contract. In other words, Defendant Board of Education did not breach her contract because Plaintiff voluntarily resigned

Finally, Plaintiff alleges that Defendant Board of Education breached a contract by failing to act on her appeal. Compl. at ¶ 39. Again, it is unclear which contractual provision that Plaintiff relies upon for this assertion. This is because there is none. Moreover, Plaintiff's appeal is currently pending. Ex. 1 at 187:13-189:15.

As is evident above, Plaintiff fails to set forth the contractual basis for any of her alleged breaches on the part of Defendant Board of Education. In addition, Plaintiff acknowledges that Defendant Board of Education had the right to engage in some of the alleged conduct of which she now complains. As to other alleged breaches, the law permitted Defendant Board of Education to engage in its conduct. For all of these foregoing reasons, Defendants' Motion for Summary Judgment should be granted as to Count I of the Complaint.

III.  NO FMLA INTERFERENCE OR RETALIATION

With respect to Defendants Barber and Holland, Defendants' Motion for Summary Judgment should be granted as to Count II because this Court has held that there is no individual capacity liability under the FMLA for public employees.[3] *See Sadowski v. U.S. Postal Serv.*, 643 F.Supp.2d 749, 756 (D. Md. 2009) (Bennett, J.); *Bosse v. Balt. Cnty.*, 692 F.Supp.2d 574, 583

---

[3] Plaintiff fails to indicate in her Complaint whether her claims against Defendants Barber and Holland are individual or official capacity suits.

(D. Md. 2010) (Grimm, J.); *Mezu v. Morgan State Univ.*, Civil Action No. WMN-09-2855, 2010 WL 1068063, at *12 n. 15 (D. Md. Mar. 18, 2010) (Nickerson, J.); *Kronk v. Carroll Cnty.*, Civ. No. L-11-0277, 2012 WL 245059, at *8 (D. Md. Jan. 25, 2012) (Legg, J.).

Moreover, because official capacity claims against public employees are the same as suits against the public agency itself, *Sadowski v. U.S. Postal Serv.,* 643 F.Supp.2d 749, 752 n. 2 (D. Md. 2009), summary judgment is warranted in favor of Defendants Barber and Holland as to Count II of the Complaint.

With respect to Defendant Board of Education Defendants' Motion for Summary Judgment should be granted as to Count II of the Complaint because Defendant Board of Education did not interfere or retaliate against Plaintiff for her exercise of FMLA rights.

To make out an interference claim under the Family and Medical Leave Act, an employee must demonstrate that (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm. *Adams v. Anne-Arundel City. Pub. Schs.,* 789 F.3d 422, 427 (4th Cir. 2015).

Harm or prejudice "exists where an employee loses compensation or benefits 'by reason of the violation,' 29 U.S.C. 2617(a)(1)(A)(i)(I); or suffers some loss in employment status remediable through 'appropriate' equitable relief, 29 U.S.C. 2617(a)(1)(B)." *Reed v. Buckeye Fire Equip.,* 241 F. App'x 917, 924 (4th Cir. 2007).

Retaliation claims brought under the FMLA are analogous to those brought under Title VII. *Laing v. Federal Express Corp.,* 703 F.3d 713, 717 (4th Cir. 2013). Plaintiff must prove three elements to establish a prima facie case of retaliation: (1) "she engaged in a protected activity"; (2) "her employer took an adverse employment action against her"; and (3) "there was a causal link between the two events." *Boyer–Liberto v. Fontainebleau Corp.,* No. 13–1473, 786

F.3d 264, 281, 2015 WL 2116849, *14 (4th Cir. 2015) (en banc) (quotation marks omitted). If the defendant advances a lawful explanation for the alleged retaliatory action, the plaintiff must demonstrate that the defendant's reason for taking the adverse employment action was pretextual. *See Laing,* 703 F.3d at 717, 719 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Here, Plaintiff suffered neither interference nor retaliation by Defendant Board of Education because she resigned. That is, any "harm" inflicted to Plaintiff was the result of her own voluntary resignation from her employment. As a result, there was no FMLA interference by Defendant Board of Education.

In addition, even if Plaintiff had not resigned voluntarily from employment, Defendant Board of Education has a lawful explanation for its decision not to renew Plaintiff's probationary non-tenured contract: Plaintiff's performance that resulted in the PAR Panel's recommendation of non-renewal of contract.

Moreover, any action taken by Defendant Board of Education (i.e., non-renewal of her probationary non-tenured contract), was after her voluntary resignation, which ended her employment. Therefore, there can be no causal link between any protected activity (taking FMLA leave) and the non-renewal of her probationary non-tenured contract in support of Plaintiff's claim for retaliation by Defendant Board of Education since she voluntarily resigned.

First, Plaintiff alleges that Defendant Board of Education interfered and retaliated against her when it assigned her work during her FMLA leave. Compl. at ¶ 41. Specifically, Plaintiff alleges that on February 11, 2018, Defendant Barber e-mailed Plaintiff and requested that she prepare a lesson plan. Ex. 1 at 101:22-102:5. However, Plaintiff acknowledged that she ignored the e-mail, prepared no lesson plan, and was never again contacted by Defendants Barber or

Holland. Ex. 1 at 103:13-104:11. Because Plaintiff suffered no harm (i.e. loss of compensation or benefit) and no adverse employment action (since she voluntarily resigned), her claims for interference and retaliation fail.

Second, Plaintiff alleges that that Defendant Board of Education interfered and retaliated against her when it failed to approve her second request for FMLA leave. Compl. at ¶ 41. However, Defendant did approve Plaintiff's leave on March 15, 2018. *See* Ex. 10.

Third, Plaintiff alleges that the Defendant Board of Education interfered and retaliated against her by notifying Plaintiff that a Performance Data Review Packet had been submitted to the PAR Panel by her Principal while she was out on FMLA leave. Compl. at ¶ 41. Nevertheless, the law allows an employer to investigate, discipline and/or terminate an employee even while that employee is out on FMLA leave. *Mercer v. Arc of Prince Georges County, Inc.*, 532 F. App'x 392, 396-97 (4th Cir. 2013). Finally, Plaintiff does not provide any authority for the proposition that providing an employee with notification constitutes FMLA interference or retaliation.

Fourth, Plaintiff alleges that Defendant Board of Education interfered and retaliated against her by failing to hold her disciplinary actions in abeyance while she was on FMLA leave. Compl. at ¶ 41. Plaintiff's claims are contrary to law as an employer is not prevented from investigating, disciplining, and/or terminating an employee for poor performance while the employee is out on FMLA leave. *Mercer v. Arc of Prince Georges County, Inc.*, 532 F. App'x 392, 396-97 (4th Cir. 2013).

Fifth, Plaintiff unbelievably argues that Defendant Board of Education interfered and retaliated against her when it did not respond to her messages regarding her second request for FMLA leave. Compl. at ¶ 41. It is unclear what harm Plaintiff suffered and how this could

constitute retaliation when Defendant Board of Education responded to Plaintiff on March 12, 2018 (Ex. 17) and approved Plaintiff's request on March 15, 2018 (Ex. 10).

Sixth, Plaintiff absurdly argues that Defendant Board of Education interfered and retaliated against her when it failed to explain to her regarding the Sick Leave Bank. Compl. at ¶ 41. However, the Sick Leave Bank is operated by the PGCEA, Plaintiff's union, and not by Defendant Board of Education. Ex. 1 at 138:4-12. Moreover, Plaintiff testified that she was familiar with the Sick Leave Bank. Ex. 1 at 141:13-142:6. Finally, Plaintiff was clearly familiar with the Sick Leave Bank because both her FMLA request forms cited to it, and Plaintiff checked boxes associated with it. *See* Exs. 7 and 9.

Seventh, Plaintiff claims that the Defendant Board of Education interfered and retaliated against her when it failed to reverse her voluntarily resignation. Compl. at ¶ 41. Plaintiff offers no support or evidence of how this could possibly constitute interference or retaliation on the part Defendant Board of Education.

Eighth, Plaintiff alleges that Defendant Board of Education interfered and retaliated against her when her probationary non-tenured contract was not renewed on April 26, 2018. Compl. at ¶ 41. However, Plaintiff ignores the fact that she voluntarily resigned on March 9, 2018.

Finally, Plaintiff alleges interference and retaliation because the Board failed to act on her appeal. Compl. at ¶ 41. However, Plaintiff's appeal and Defendant's Board of Education's Motion to Dismiss is appeal is currently pending. Ex. 1 at 187:13-189:15. For all of these foregoing reasons, Defendants' Motion for Summary Judgment should be granted as to Count II of the Complaint.

Even if Plaintiff met her burden on establishing interference and retaliation under the

FMLA, which she has not, Defendant Board of Education has offered a valid lawful explanation for each and every alleged retaliatory action. In sum, Plaintiff was a probationary non-tenured teacher, was performing poorly, voluntarily resigned her employment, and was recommended for non-renewal by the PAR Panel. There is simply no evidence of breach of contract or FMLA interference or retaliation.

## Conclusion

For all of the foregoing reasons, Defendants respectfully requests that the Court grant their Motion for Summary Judgment as to all counts of the Complaint.

Respectfully submitted,

_/s/ James E. McCollum, Jr._
James E. McCollum, Jr.
Federal Bar No. 06448
Amit K. Sharma
Federal Bar No. 16660

McCollum & Associates, LLC
7309 Baltimore Avenue, Suite 117
College Park, Maryland 20740
Tel:    (301) 864-6070
Fax:    (301) 864-4351
jmccollum@jmlaw.net
asharma@jmlaw.net

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via the Court's CM/ECF system on this 24th day of October, 2019, to:

Kathlynne Ramirez, Esquire
Kathlynne Ramirez, Esq., LLC
31 Walker Avenue
Gaithersburg, Maryland 20877

*Attorneys for Plaintiff*

                                                 /s/ James E. McCollum, Jr.
                                                James E. McCollum, Jr.